# In the United States Court of Federal Claims

No. 24-1662C
(Filed Under Seal: December 20, 2024)
Reissued: January 7, 2025[1]

```
*************************************
                                    *
ITEGRITY, INC.,                     *
                                    *
                Plaintiff,          *
                                    *
        v.                          *
                                    *
THE UNITED STATES,                  *
                                    *
                Defendant,          *
                                    *
And                                 *
                                    *
ATTAINX INC.,                       *
                                    *
                Defendant-Intervenor.*
*************************************
```

    *Elizabeth N. Jochum*, Washington, D.C., for Plaintiff, with *Shane M. Hannon*, of counsel.

    *Kyle S. Beckrich*, Trial Counsel, United States Department of Justice, Civil Division, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Douglas Mickle*, Assistant Director, for the Government. *Florence Bridges*, Senior Attorney, U.S. Department of Commerce, of counsel.

    *Daniel J. Strouse,* Arlington, VA, for Intervenor.

## OPINION AND ORDER

**DAMICH**, Senior Judge

---

[1] The Court issued this opinion under seal on December 20, 2024, and the Court gave the parties fourteen days to propose the redaction of competition-sensitive, proprietary, confidential, or otherwise protected information. The Plaintiff filed its proposed redactions, to which the Government and Intervenor do not oppose. Neither the Government nor Intervenor provided any redactions. Thus, the Court adopts the Plaintiff's redactions and issues the redacted opinion unsealed. Redactions are indicated with "XXXX."

In this post-award bid protest, ITegrity, Inc., the incumbent contractor, challenges the National Oceanic and Atmospheric Administration's ("NOAA" or the "Agency") Past Performance Evaluation. Specifically, Plaintiff alleges that the Agency's evaluation of its Past Performance minimized its performance on the incumbent contract and downgraded its confidence rating based on less relevant past performance references. This, argues Plaintiff, was irrational, arbitrary, or capricious and effectively precluded it from receiving the award.

ITegrity timely filed its Motion for Judgment on the Administrative Record on November 8, 2024, seeking a permanent injunction preventing NOAA from proceeding with the contract award and asks the Court to set aside NOAA's award. The Government and Intervenor filed their respective Responses and Cross-Motions for Judgment on the Administrative Record. The Motions are fully briefed, and oral argument is unnecessary.

For the reasons set forth below, the Court holds that NOAA properly documented its decision and that its analysis is reasonable. Therefore, the Court **GRANTS** the Government's and Intervenor's Cross-Motions for Judgment on the Administrative Record and **DENIES** ITegrity's Motion for Judgment on the Administrative Record.

## BACKGROUND[2]

### I. The Solicitation

On October 13, 2023, NOAA issued a Solicitation seeking Assessment and Authorization ("A&A") services for NOAA's National Weather Service ("NWS"). The Solicitation contemplates award of a single Blanket Purchase Agreement ("BPA") to a contractor who would conduct IT security controls assessments, including for cloud and on-premises systems within a parent/child organizational model; continuously monitor IT systems; conduct penetration testing; perform compliance reviews; and create final Assessment packages and reports. AR 290-91.

The BPA is in support of NWS's mission to provide prompt, reliable, and high-quality annual assessments of all NWS Federal Information Security Modernization Act (FISMA) systems. AR 289. The services provided under the contract are critical to improve program efficiency, effectiveness, and consistency by providing prompt, reliable, repeatable, and high-quality annual assessment of all NWS systems supporting NOAA's risk management framework. AR 289. The BPA was to be performed over a one-year base period and four one-year option periods. AR 292. Unlike the previous contract, for which ITegrity was the incumbent, this BPA also involves call orders outside NWS, including non-NWS systems throughout NOAA. AR 289, 292.

---

[2] The facts in the background are derived from the administrative record ("AR"). ECF No. 22.

## II. The Solicitation's Evaluation Factors

The Solicitation states that Offerors were required to submit three volumes upon which the evaluation would be based: (1) Non-Price Business Information;[3] (2) Non-Price Factors; and (3) Price.  AR 389-90.

The Solicitation states that an Offeror's price is its overall price for the Base Contract and for the four option years.  AR 399.  The Solicitation provides that the Agency would evaluate price to determine if it was fair and reasonable.  *Id.*

The volume most pertinent to this protest, Volume II: Non-Price Factors, includes two non-price factors: Factor A: Technical Approach, and Factor B: Past Performance.  *Id.*

### A. Factor A: Technical Approach

The Technical Approach factor addressed whether "the vendor provides a sound, compliant approach that meets the requirements of [Performance Work Statement] Section 4."  AR 398.  Offerors were encouraged to demonstrate their knowledge of the PWS' functional areas.  *Id.*  Offerors were also required to show their qualifications under several industry standards.  *Id.*  Finally, offerors had to propose Key Personnel that met the Solicitation's minimum qualifications.  *Id.*

### B. Factor B: Past Performance

In considering past performance, the Solicitation provided that the factor "will be evaluated based on contracts relevant in terms of size, scope, and complexity to the instant requirement."  AR 398.  "The Government's evaluation of similarity is subjective."  *Id.*  In submitting a proposal, offerors were to include up to but not more than three contracts to be considered.  AR 394.

Once an offer was determined to be technically acceptable, the Technical Evaluation Team ("TET") would evaluate the offeror's past performance.  AR 397.  The TET would first assign a relevancy rating to the past performance reference:

---

[3] The non-price business information volume is not relevant to this protest.  Thus, the Court does not need to provide further details regarding this volume.

| Rating | Definition |
|---|---|
| Very Relevant | Past/present performance effort involved **essentially the same magnitude of effort and complexities** this solicitation requires. |
| Relevant | Past/present performance effort involved **much of the magnitude of effort and complexities** this solicitation requires. |
| Somewhat Relevant | Past/present performance effort involved **some of the magnitude of effort and complexities** this solicitation requires. |
| Not Relevant | Past/present performance efforts involved **little or none of the magnitude of effort and complexities** this solicitation requires. |

AR 2085. If a past performance reference was deemed not relevant, it would not be considered in evaluating the offeror's overall past performance assessment. AR 398.

Based on the TET's assessment of recency, relevancy, and quality of an offeror's past performance, the TET then assigned an overall confidence assessment/rating to that offeror's past performance. AR 2085-86. The TET would assign an adjectival rating of "High Confidence," "Some Confidence," "Low Confidence," "No Confidence," or "Unknown Confidence (Neutral)." *Id*. Relevant to this protest, a high confidence rating indicated:

> Based on the vendor's recent/relevant past performance record, the Government has high confidence that the vendor understands the requirement, proposes a sound approach, and will be successful in performing the required effort with little or no Government intervention.

AR 2085. Some confidence, on the other hand, indicated:

> Based on the vendor's recent/relevant performance record, the Government has some confidence that the vendor understands the requirement, proposes a sound approach, and will successfully perform the required effort with some Government intervention.

*Id.*

The Solicitation further stated:

> The Government will use its discretion to determine the sources of Past Performance information used in the evaluation, and the information may be obtained from references provided by the vendor, the agency's knowledge of contractor performance, other Government agencies or commercial entities, or Past Performance databases. If a vendor does not have a history of relevant contract experience, or if Past Performance information is not available, the vendor will receive a neutral Past

>Performance rating.
>
>Amendment 0001 - Attachment D – Relevant Project Form is provided for vendors to submit the information requested for each Past Performance record submitted.  In the description of work, vendors must provide a detailed explanation demonstrating the similarity of the contracts in terms of size, scope and complexity, to the requirements of this RFQ for purposes of relevancy.  The Government reserves the right to contact customers identified in the form and solicit further information about performance in regard to quality, timeliness and cost. Other related Past Performance information may be sought and used for evaluating completeness and accuracy of the vendor's quote.  Past Performance information may be obtained from a variety of sources including other Government agencies or commercial entities, the agency's knowledge of vendor performance, or Past Performance databases.

AR 2084-85.

### C. The Solicitation's Source Selection Tradeoff

The Solicitation adopted a "Technically Acceptable–Past Performance/Price Tradeoff" source selection procedure.  AR 397.  Thus, in making an award the solicitation provided that: "For those offerors who are determined to be technically acceptable, tradeoffs will be made between past performance and price, with past performance being considered significantly more important than price,  though price remains an important consideration in the best value award decision."  *Id.*

The Solicitation explains that "Past Performance will be considered significantly more important than . . . Price" and that NOAA "may make an award to other than the lowest-priced vendor . . . if the source selection official determines that to do so would result in best value to the government."  *Id.*

### III. NOAA's Evaluation and Award

NOAA received 21 proposals, including one from ITegrity and one from AttainX, which are the only two Offerors relevant to this protest.  AR 2086-87.  Both ITegrity and AttainX were rated "acceptable" for technical capability, and NOAA thus evaluated both offeror's past performance references.  *Id.*

### A. ITegrity's Evaluation

ITegrity submitted three past performance references.  In support of its references each offeror was to complete the Relevant Project Form, Attachment D.  Yet, ITegrity failed to comply and instead submitted an incomplete form.  The TET noted that "upon review it was found that only the first eight past performance questions out of the 19 required questions were answered and submitted by ITegrity."  AR 2188, 2195.

5

First, ITegrity submitted its incumbent contract for the instant procurement ("PP1"). AR 2186. The TET determined that this reference was "very relevant" and that its quality was "very good." *Id.* The TET, however, noted that the incumbent contract was smaller than the current procurement, the latter involving a higher overall dollar volume and more full-time employees. AR 2191. Even so, the TET offset these differences "by the similarity in requirements, and exhibits its relevancy as a basis for confidently demonstrating the capability to meet the intricate demands of the A&A effort." *Id*. Given that ITegrity submitted an incomplete Relevant Project Form there were areas with missing information. However, as ITegrity is the incumbent, the TET was able to use personal knowledge for the vendor's demonstrated past performance in this instance to evaluate this reference in its entirety. AR 2192. The TET concluded that "[t]he scope and complexity of this reference combined with the quality ratings substantially increase the Government's confidence in the vendor's ability to successfully perform the required effort and exhibit its relevance as a basis for confidently demonstrating the capability to meet the demands of the A&A effort." *Id*.

ITegrity's second past performance reference was for a contract performed by its subcontractor for the Department of Homeland Security("DHS") ("PP2"). AR 2192. After review, the TET found "the scale in terms of contract value and team size is similar to the A&A effort, [but the] the lack of similarity in requirements diminishes its relevancy as a basis for confidently demonstrating the capability to meet the more substantial demands of the A&A effort." *Id*. This led the TET to conclude that PP2 "does not translate to the technical capabilities required to successfully fulfill the scope of the instant acquisition." *Id*. Thus, the TET determined that the contract was not a relevant past performance reference. *Id.* Accordingly, the second reference was not further evaluated for quality purposes. AR 2191.

Finally, ITegrity's third past performance reference was another contract with DHS performed by its subcontractor ("PP3"). AR 2194-97. Again, as ITegrity submitted an incomplete Relevant Project Form, the TET noted that some past performance information was again missing. The TET determined that although this contract involves many similar tasks as the instant procurement, the DHS contract "did not include penetration testing" or "mention . . . experience with parent/child organization models," both of which are essential to the instant procurement. AR 2196. Accordingly, the TET determined that the third past performance reference was somewhat relevant. AR 2197. With respect to the third reference's quality, the TET noted that the contractor had been rated "Satisfactory" on all areas assessed in the Contractor Performance Assessment Reporting System ("CPARS"). AR 2190-91. The TET determined that due to the lack of experience in efforts required in the instant procurement, the reference "diminishes the Government's confidence in the vendor's ability to successfully perform the effort." AR 2197.

Having concluded that ITegrity submitted one past performance reference that was highly relevant with a very good quality rating, one reference that was not relevant (and thus not further considered), and one that was somewhat relevant with a satisfactory quality rating, the TET determined that ITegrity's past performance record leads to "some confidence" that ITegrity "understands the requirement, proposes a sound approach, and will be successful in performing the contract even with some Government intervention." AR 2191.

### B. AttainX's Evaluation

Like ITegrity, AttainX also submitted three past performance references – one for its own contract and two for contracts of its subcontractors. AR 2166. AttainX's first reference was a contract in which AttainX provided support for "Cybersecurity and A&A initiatives for systems[] and applications across all of Air Force Recruiting Services." AR 2167. Although this contract was smaller in size than the instant procurement (like the incumbent contract submitted by ITegrity), the TET determined that the contract was very relevant because it involved "essentially the same magnitude of effort and complexity [that] this solicitation requires." AR 2171. In CPARS, AttainX received an "exceptional" rating in all areas assessed, and the CPARS narrative extensively praised AttainX's performance. *Id.* Accordingly, the TET determined that "the scope and complexity of this reference, combined with the exceptional quality ratings, substantially increase the Government's confidence in [AttainX's] ability to successfully perform the required effort." *Id.*

AttainX's second past performance reference, a contract performed by one of AttainX's subcontractors, involved "support for the NWS FISMA and A&A Services Program." AR 2172. Once again, the size of the contract was smaller than the instant procurement, but the TET determined the reference was very relevant because it "involved essentially the same magnitude of effort and complexities [that] this solicitation requires." AR 2174-75. As to quality, the vendor was rated "very good" in all areas assessed, with extensive narrative statements confirming the high quality of the work performed. AR 2175. Like AttainX's first reference, this reference "substantially increase[d] the Government's confidence in [AttainX's] ability to successfully perform the required effort." *Id.*

Finally, AttainX's third past performance reference was a contract performed by another one of its subcontractors that "provide[d] cyber security defense services to the Department of Education Federal Student Aid Cybersecurity Operations Support." *Id.* This contract was greater in size than the instant procurement, and "involved essentially the same magnitude of effort and complexities [that] this solicitation requires." AR 2178. The TET then determined the reference was very relevant to the instant acquisition. *Id.* The contractor received all "satisfactory" ratings in CPARS for this contract, and the narrative statements indicated that the contractor performed its contractual requirements as requested. AR 2179. Like AttainX's other past performance references, the TET determined that "the scope and complexity of this reference combined with the quality ratings substantially increase the Government's confidence in [AttainX's] ability to successfully perform the required effort." *Id.*

When AttainX's three past performance references were viewed in totality, the TET determined that AttainX's past performance record leads to "high confidence" that AttainX "understands the requirement, proposes a sound approach, and will be successful in performing the contract, even with little to no Government intervention." AR 2180.

After its analysis and review of all offers, the TET recommended that the Agency issue an award to AttainX. AR 2194. The ultimate award decision, however, lay with the Source Selection Official ("SSO").

### C. The SSO's Decision and Award

The SSO concurred with the TET's technical evaluations of the offerors. AR 2260. Based on the results from the technical evaluation, past performance record, and price submitted, the SSO compared the following ratings between ITegrity and AttainX:

|  | Technical Approach | Past Performance | Price |
| --- | --- | --- | --- |
| **ITegrity** | Acceptable | Some Confidence | XXXXXXX |
| **AttainX** | Acceptable | High Confidence | $21,551,388 |

AR 3506. In an extensive and thorough analysis, the SSO determined that AttainX's "more relevant/higher confidence past performance references" warranted the approximately XXXXXX price premium as compared to ITegrity. AR 2285.

Specifically, NOAA noted the "differences in the scope and complexity" of ITegrity's and AttainX's past performance references. AR 2282. ITegrity only submitted one reference that was deemed very relevant, and even that contract was smaller than the instant acquisition in terms of contract value and team size. *Id.* Comparably, AttainX submitted three very relevant references, and viewed in totality, those references involved "a broader scope and higher complexity" than the instant acquisition. *Id.* Further, the fact that AttainX submitted very relevant past performance references for its subcontractors demonstrated that AttainX proposed a "robust team." *Id*.

In comparing AttainX's proposal to ITegrity's, the SSO noted all three of AttainX's Past Performance references received a "Very Relevant" rating. *Id*. In contrast, only one of two of ITegrity's Past Performance references received a "Very Relevant" rating. This difference "distinguished [ITegrity] from AttainX." *Id.* The SSO found AttainX "outperforms" ITegrity and determined AttainX "is better positioned to successfully meet the demands of the A&A effort as well as the NOAA wide effort and deliver quality results." AR 2283.

Even though AttainX proposed a higher price, AttainX's "combined technical acceptability and more relevant/higher confidence past performance references are more beneficial to the government and [] therefore worth the price premium of XXXXXX." AR 2285. Additionally, ITegrity submitted only one somewhat relevant reference from its subcontractor, demonstrating that its subcontractor is more limited than AttainX's subcontractors. AR 2282-83.

The SSO then concluded that "while both ITegrity, Inc. and AttainX, Inc. received positive evaluations for their past performance efforts, there are differences in the scope, specific capabilities, and outcomes." AR 2283. The SSO concluded "it is in the best interest of the Government to make an award to AttainX." AR 2286. Accordingly, NOAA awarded the contract to AttainX.

### IV. Procedural History

NOAA informed ITegrity on June 14, 2024, that it was not selected for award. AR 2378-95. ITegrity timely filed a post-award protest at the Government Accountability Office ("GAO"). AR 2399.

At the GAO, ITegrity alleged that NOAA "unreasonably and unequally evaluated its and AttainX's quotations under the past performance factor and conducted a flawed best-value tradeoff." *Id.* Specifically, ITegrity argued that NOAA "should have given greater weight to its first past performance reference in arriving at its overall past performance rating" and that its overall rating should not have been "downgrade[d]" by its second and third references. AR 3507-08.

The GAO did not find ITegrity's arguments convincing, finding that NOAA "was under no obligation to conduct an evaluation in a light most favorable to the protester" and that the solicitation was clear that NOAA "could consider and weigh the references a vendor chose to submit." AR 3508. The GAO determined that ITegrity's arguments "amount to nothing more than disagreement with the weight [NOAA] gave ITegrity's first reference" and that such disagreement is not enough to set aside the award. *Id.*

Next, the GAO disagreed with ITegrity's contention that NOAA erred in determining that ITegrity's second past performance reference was not relevant. AR 3509. Indeed, the GAO provided several examples of how the work performed under the second past performance reference differed from the work that would be performed under the BPA. AR 3509-10. Accordingly, the GAO determined that NOAA reasonably evaluated ITegrity's past performance record.

The GAO also addressed ITegrity's argument that NOAA "unequally evaluated AttainX's and ITegrity's third past performance references." AR 3510. The GAO disagreed with ITegrity's contentions and found that the "the differences in the overall confidence ratings resulted from the relevance of the references submitted, which was based primarily on the size, scope, and complexity of the references." AR 3511. Accordingly, because AttainX submitted more relevant references, NOAA reasonably assigned a higher confidence rating to AttainX than ITegrity. AR 3511. In short, the GAO determined that an agency's evaluation of past performance is a matter of discretion, and that ITegrity failed to raise a challenge that showed more than mere disagreement with NOAA's reasonable judgment. AR 3508-11.

The GAO denied ITegrity's protest on September 26, 2024. AR 3504-11. ITegrity then filed its protest here.

### STANDARD OF REVIEW

In a bid protest, the Court "review[s] the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *see Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir.

2004).   An APA challenge requires showing that the agency action in question is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001).   Accordingly, "[a] bid award may be set aside" if (1) "the procurement official's decision lacked a rational basis" or (2) "the procurement procedure involved a violation of regulation or procedure."   *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020) (quoting *Impresa*, 238 F.3d at 1332).   The APA also requires that "due account shall be taken of the rule of prejudicial error."   5 USC 706.   So, "[t]o prevail in a bid protest, a protestor must show a significant, prejudicial error in the procurement process."   *WellPoint*, 953 F.3d at 1377 (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)); *see also Bannum*, 404 F.3d at 1351.

In reviewing the agency's procurement decisions, the Court does not substitute its judgment for that of the agency.   *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220 (1997); *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997); *see also M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986) (holding that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not violate applicable law or regulations.").   The disappointed bidder "bears a heavy burden," and the contracting officer is "entitled to exercise discretion upon a broad range of issues confronting [her]." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations and quotes omitted).   This burden "is not met by reliance on [the] pleadings alone, or by conclusory allegations and generalities." *Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100, 105 (1988); *see also Campbell v. United States*, 2 Cl. Ct. 247, 249 (1983).   A procurement decision is rational if "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1333. But "that explanation need not be extensive." *Bannum, Inc. v. United States*, 91 Fed. Cl. 160, 172 (2009) (*citing Camp v. Pitts*, 411 U.S. 138, 142-43 (1973)).

In reviewing an evaluation of past performance information in a negotiated procurement, "the greatest deference possible is given to the agency – what our Court has called a 'triple whammy of deference.'" *Gulf Group Inc. v. United States*, 61 Fed. Cl. 338, 351 (2004) (quoting *Overstreet Elec. Co. v. United States*, 59 Fed. Cl 99, 117 (2003)); *see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 909 (Fed. Cir. 2013) (agencies are afforded "broad discretion" in past performance evaluations); *Garrett Electronics, Inc. v. United States*, 163 Fed. Cl. 632, 666 (2023) (noting that a protester's challenge to an agency's past performance evaluation "faces a steep, uphill climb" as such evaluations are entitled to "the greatest deference possible"). "[E]valuation of experience and past performance, by its very nature, is subjective . . . and an offeror's mere disagreement with an agency's evaluation judgments does not demonstrate that those judgments are unreasonable." *Alisud - Gesac Handling - Servisair 2 Scarl v. United States*, 161 Fed Cl. 655, 668 (2022).   Further, procurement officials are usually "given great discretion in determining what references to review in evaluating past performance." *SDS Int'l v. United States*, 48 Fed. Cl. 759, 771 (2001) (citation omitted). "Thus, when evaluating an offeror's past performance, the [contracting officer] 'may give unequal weight,' or no weight at all, 'to different contracts when [the contracting officer] views one as more relevant than another.'" *Am. Auto Logistics, LP v. United States*, 117 Fed. Cl. 137, 186 (2014) (citation omitted).

**DISCUSSION**

I. **NOAA's Past Performance Evaluation was Reasonable and Consistent with the Solicitation.**

ITegrity challenges the past performance evaluation NOAA conducted in awarding the contract to AttainX. As stated previously, NOAA evaluated each past performance reference submitted by ITegrity. Out of the three references, NOAA deemed two relevant. For the two references it deemed relevant, the Agency evaluated the quality of each contract's work. As a result, NOAA concluded that ITegrity's past performance record leads to "some confidence" that ITegrity "understands the requirement, proposes a sound approach, and will be successful in performing the contract even with some Government intervention." AR 2191. This rating, according to ITegrity, is unreasonable.

In support, ITegrity argues that given its exceptional performance on the incumbent contract, which ITegrity maintains is "nearly identical" to the instant procurement, the TET's evaluation should have resulted in a "High Confidence" rating. However, the TET did not give out individual ratings, but instead, reviewed and rated ITegrity's three past performance references "in their totality." AR 2191. Likewise, the SSO assigned ITegrity a "Some Confidence" rating only after considering ITegrity's references "holistically." AR 2271. The Agency's error, according to ITegrity, is that the terms of the Solicitation "never suggested" that NOAA would use all submitted references to determine a past performance rating. Pl. Resp. 9. Yet the Solicitation explicitly states that "information may be obtained from references provided by the vendor" to evaluate past performance. AR 395. Furthermore, the Solicitation provided that offerors were to include up to but not more than three contracts to be considered. AR 394. ITegrity made the decision to provide three past performance references in its proposal, as it was permitted to do. ITegrity cannot now meaningfully argue that NOAA's consideration of those references renders NOAA's evaluation contrary to the Solicitation.

ITegrity also advances that the Court should ignore the Government's reference to an offeror's ability to provide a "robust team" because the past performance evaluation criteria never discussed the need for a robust team and thus the argument is post-hoc. Pl. Resp. at 3. However, in the evaluation comparing ITegrity and AttainX, the SSO specifically highlighted that AttainX presented a "robust team," while ITegrity's past performance references gave less confidence that ITegrity could perform the contract. AR 2272. There is nothing post-hoc about presenting explanation that NOAA "offered contemporaneously with its decision." *Kearney & Company, P.C. v. United States*, No. 24-162, 2024 WL 2209767, at *10 (Apr. 30, 2024). Nor was it contrary to the Solicitation for NOAA to consider the quality of the team of references submitted by an offeror in making its past performance rating. Indeed, this Court has confirmed that "professional judgment is implicit throughout the selection process." AR 397; *Alisud - Gesac Handling - Servisair 2 Scarl v. United States*, 161 Fed Cl. 655, 668 (2022). Here, that is exactly what NOAA did. It was therefore proper for the SSO to consider whether the offerors demonstrated, through its past performance, a robust team capable of fulfilling the contract's requirements.

Additionally, ITegrity contends that because the Solicitation did not require past performance references from subcontractors, "consideration of whether any particular subcontractor has the requisite experience was not a permissible consideration under the Past Performance factor." Pl. Resp. at 4. Although the Solicitation does not specifically state that past performance references of subcontractors would be considered that the Agency considered them was not unreasonable. The Solicitation gave the Agency latitude in determining both the contracts that would be considered in making a past performance evaluation and the manner in which those contracts were to be evaluated. AR 394-95. In particular, the Solicitation stated: "The Government reserves the right to obtain information for use in the evaluation of Past Performance from any and all sources. . . ." AR 395. This afforded the Agency broad discretion in its review. *See Tyler Constr. Grp. v. United States*, 570 F.3d 1329, 1334 (Fed. Cir. 2009) (noting the "broad discretion" afforded to agencies so long as the action is not prohibited by statute, regulation, or the solicitation).

ITegrity asserts that NOAA's error "was not in evaluating and consider[ing] PP2 and PP3," but instead that NOAA erred by "using PP2 and PP3 to create a composite confidence rating for ITegrity, downgraded based on relevance rather than non-existent poor performance." Pl. Resp. at 7. Thus, on one hand, ITegrity states that the agency was permitted to "evaluate" and "consider" ITegrity's PP2 and PP3, but on the other hand, it argues that the Agency could not "use" PP2 and PP3 as part of the past performance evaluation to arrive at a final rating. This makes no sense. First of all, PP2 was not used as it was deemed not relevant. However, why would the Agency evaluate and consider PP3 and then not use that in its evaluation? Again, ITegrity chose to include these references. The Agency did as the Solicitation required by evaluating the references and rating the references then comparing them to the Solicitation requirements. That was what was tasked by the Solicitation and properly done by the Agency.

ITegrity further complains that NOAA "punish[ed]" ITegrity for submitting a "not relevant" past performance record. Pl. Resp. at 8. This statement is not supported by the record. Instead, the record shows that ITegrity's PP2, which was determined to be not relevant, "was not further evaluated for quality purposes." AR 2187.

And finally, ITegrity's assertion that "The Agency's confidence in ITegrity's ability to perform should have been instructed by its *most* relevant past performance reference, with less relevant references providing neither evaluation benefit nor detriment." Pl. Resp. at 9 (emphasis in original). Here, NOAA considered the two relevant past performance references in making ITegrity's past performance rating. Although PP3 was determined to be less relevant, the Solicitation did not preclude the Agency from in considering it in its final evaluation. ITegrity provided the references; thus, ITegrity cannot fault NOAA for considering them.

Considering the two relevant references in their totality, NOAA reasonably determined that ITegrity's past performance warranted a "Some Confidence" rating. This rating was supported by the record and the evaluation was consistent with the Solicitation. It appears that ITegrity merely disagrees with the past performance evaluation. However, a mere disagreement with the past performance evaluation is not enough to sustain a protest. Therefore, the Court holds that the past performance evaluation by the Agency was reasonable.

## II. ITegrity was not prejudiced.

ITegrity argues that but for its "Some Confidence" rating it would have had a substantial chance to receive the award because (1) it was one of the two highest rated offerors, (2) it performed exceptionally under one of its three contract references, and (3) it proposed a slightly lower (XX) price. Pl. Resp. at 10-11. The Court disagrees.

As this was a best value Solicitation, the Solicitation provided the guidance to the SSO in making its award. In particular, the Solicitation provided that "Past Performance will be considered significantly more important than . . . Price" and that NOAA "may make an award to other than the lowest-priced vendor . . . if the source selection official determines that to do so would result in best value to the government." AR 397. Applying this standard, the record shows that the Agency made its best value determination by considering the relevancy and quality of ITegrity's performance under the incumbent contract as well as recognizing the limitations of the incumbent contract relative to the instant procurement. In particular, the SSO noted the "differences in the scope and complexity" of ITegrity's and AttainX's past performance references. AR 2282. Furthermore, the SSO found AttainX "outperforms" ITegrity and determined AttainX "is better positioned to successfully meet the demands of the A&A effort as well as the NOAA wide effort and deliver quality results." AR 2283. The record is clear that the SSO's determination would not be disturbed even if ITegrity was correct that the Agency incorrectly assigned a "Some Confidence" rating to ITegrity.

Furthermore, ITegrity's argument that its price was XX lower is not relevant as the award was to be made on a best value determination where past performance was more important than price. The SSO addressed the price difference stating: "even though AttainX proposed a higher price, AttainX's combined technical acceptability and more relevant/higher confidence past performance references are more beneficial to the government and [] therefore worth the price premium of XXXXXX." AR 2285. The SSO then concluded that "while both ITegrity, Inc. and AttainX, Inc. received positive evaluations for their past performance efforts, there are differences in the scope, specific capabilities, and outcomes." AR 2283. This provided the basis for concluding it was "in best interest of the Government to make an award to AttainX." AR 2286. It is clear that the SSO's evaluation was an extensive and thorough analysis. Accordingly, ITegrity has not met its burden to show that it has a substantial chance at being awarded the contract.

## CONCLUSION

ITegrity has not established that NOAA's evaluation was conducted in an irrational, arbitrary, or capricious manner, or that NOAA's evaluation prejudiced ITegrity. Not having shown success on the merits, this Court need not consider the other injunctive factors. *See Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018) (holding that "proving success on the merits is a necessary element for a permanent injunction"). No relief is warranted. Accordingly, ITegrity's Motion for Judgment on the Administrative Record is **DENIED**. The Government's and Intervenor's Cross-Motions for Judgment on the Administrative Record are **GRANTED**. The Clerk of Court is directed to enter judgment for the Government. No costs.

The parties are directed to file redactions **within fourteen (14) days** of the date of this Opinion and Order.

**IT IS SO ORDERED.**

s/Edward J. Damich
EDWARD J. DAMICH
Senior Judge
